UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA

DWAYNE PHELPS, )
              Movant, )
 )
vs. ) 2:10-cv-302-WTL-WGH
 )
UNITED STATES OF AMERICA. )

**Entry Discussing Motion for Relief Pursuant to
28 U.S.C. ' 2255 and Denying Certificate of Appealability**

For the reasons explained in this Entry, the motion of Dwayne Phelps for relief pursuant to 28 U.S.C. ' 2255 must be denied and the action dismissed with prejudice. In addition, the court finds that a certificate of appealability should not issue.

### I. The ' 2255 Motion

Drug charges against Phelps in No. 2:08-cr-14-WTL-CMM-06 were resolved through the submission and acceptance of his plea agreement with the United States. Phelps agreed to plead guilty to specified charges in his guilty plea and in open court at a hearing conducted on August 24, 2009. The plea agreement provided that Phelps waived his right to appeal his conviction and sentence and expressly agreed not to contest, or seek to modify, his conviction or his sentence or the manner in which it was determined in any proceeding, including, but not limited to, in an action brought under 28 U.S.C. ' 2255.

The court accepted Phelps= plea, finding that it complied with the requisites of Rule 11 of the *Federal Rules of Criminal Procedure*. In doing so, the court found that Phelps was entering his plea of guilty knowingly and voluntarily, and he understood the consequences of his plea. On November 5, 2009, the court sentenced Phelps to a term of 240 months imprisonment, the statutory minimum. No direct appeal was filed with respect to the disposition.

The United States argues that Phelps= ' 2255 motion is barred by the waiver of post-conviction relief rights in the written plea agreement. Phelps argues that his waiver was not voluntarily made because of ineffective assistance of counsel.

The Seventh Circuit has recognized the validity of waivers such as that included in the plea agreement in No. 2:08-cr-14-WTL-CMM-06 and will enforce the waiver unless there is a claim that the plea agreement/waiver was entered into involuntarily or that the waiver provision itself was a result of the ineffective assistance of counsel during the negotiation of the waiver. In *Jones v. United States*, 167 F.3d 1142, 1145 (7th Cir. 1999), the Seventh Circuit held that only two claims could be raised on a section 2255 motion by an individual who waived his right to appeal: (1) the defendant received ineffective

assistance of counsel in negotiating the waiver; or (2) that the waiver was not knowingly and voluntarily made. *Jones* states that courts should be A[m]indful of the limited reach of this holding, we reiterate that waivers are enforceable as a general rule; the right to mount a collateral attack pursuant to ' 2255 survives only with respect to those discrete claims which relate directly to the negotiation of the waiver.@ *Id.* at 1145; *see also Mason v. United States*, 211 F.3d 1065, 1069 (7th Cir. 2000) (because the ineffective assistance of counsel challenge relating to sentencing had nothing to do with the issue of a deficient negotiation of the waiver, the petitioner waived his right to seek post-conviction relief). Additionally, in *Mason*, the court stated that the following analysis should be considered in determining whether a claim has been waived: A[C]an the petitioner establish that the waiver was not knowingly or voluntarily made, and/or can he demonstrate ineffective assistance of counsel with respect to the negotiation of the waiver?@ *Id.*

In this case, Phelps alleges that his counsel was ineffective because he failed to Aproperly explain@ to him that the waiver of his appellate rights included a waiver of his right to file a ' 2255 motion. This claim is defeated by Phelps= own testimony at the change of plea hearing. Phelps stated, under oath, that he had read the petition to enter a plea of guilty, the plea agreement, and stipulated facts, and that he had discussed those documents with his counsel. He testified that he felt that he understood the petition to enter a plea and the plea agreement after he discussed them with his attorney. Phelps testified to having read the plea agreement before he signed it. Phelps did not raise any questions as to any provision of the plea agreement or the waiver, nor did he indicate that he had difficulty understanding what he read. His unsupported allegation that as a layman he could not have understood and appreciated the implications of such a waiver does not defeat his prior testimony. Phelps does not even specify in what way he did not Aappreciate the implications@ of the ' 2255 waiver nor how counsel failed to explain any aspect of the waiver.

Phelps further contends that the court had a duty to remedy counsel=s failure by discussing the post-conviction waiver during the guilty plea hearing, but failed to do so. Without identifying it as such, Phelps has asserted a violation of Rule 11(b)(1)(N) of the *Federal Rules of Criminal Procedure*. According to that Rule, before accepting a plea of guilty the court must inform the defendant of, and determine that the defendant understands, Athe terms of any plea-agreement provision waiving the right to appeal or to collaterally attack the sentence.@ *Id.* While the court did expressly discuss the waiver of Phelps' appellate rights, there was no specific mention or discussion of his agreement not to challenge his conviction in a ' 2255 action. The record shows that the court's compliance with of Rule 11(b)(1)(N) was slim to none.

It does not follow, however, that the waiver provision is thereby rendered ineffective or that, more significantly, Phelps' conviction is tainted by error warranting the relief he seeks. A[A] defendant who seeks reversal of his conviction after a guilty plea, on the ground that the district court committed plain error under Rule 11, must show a reasonable probability that, but for the error, he would not have entered the plea.@ *United States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004). The defendant must demonstrate that his plea was not voluntary by showing that Athe probability of a different result is sufficient to undermine confidence in the outcome of the proceeding.@ *Id.* AA defendant will rarely, if ever, be able to obtain relief for Rule 11 violations under ' 2255 . . . .@ *Id.,* at

83 n.9. To determine whether the plea was truly voluntary, the court looks to "the totality of the circumstances surrounding the negotiation of the plea agreement and the court's acceptance of the plea." *United States v. Polak*, 573 F.3d 428, 431 (7th Cir. 2009). Phelps "must do more than show that the Rule was technically violated. He must show that his guilty plea was involuntary and that he would not have entered it on the basis of the record as a whole. . . ." *United States v. Sura*, 511 F.3d 654, 660 (7th Cir. 2007).

During the change of plea hearing, Phelps responded "yes" to the court's thorough questioning about his ability to read and understand the written word. The court inquired as to how far Phelps went in school (the 11th grade with a GED), whether Phelps had any difficulties reading and understanding the English language (he did not), whether Phelps had gone over with his attorney the superseding indictment, the petition to enter a plea of guilty, the plea agreement, and the stipulated facts (he had), and whether Phelps had read and understood each document before he signed them (he had). The court read the elements of each of the charged offenses and asked if Phelps had any questions, to which Phelps responded that he had none. The court discussed the mandatory minimum and the maximum sentences for the charges against Phelps. Phelps testified that he understood. Phelps testified that he had authorized his attorney to negotiate the plea agreement with the government. The court drew Phelps' attention to each paragraph of the plea agreement, including paragraph 10 in which Phelps agreed to give up his right to appeal his conviction and sentence as long as it was statutorily correct. The last sentence of that paragraph, which Phelps had testified he had read and understood, provided that he expressly agreed not to contest his conviction or sentence in any proceeding, including an action brought under ' 2255. Even though the court did not specifically mention that the appellate waiver applied to collateral attacks such as ' 2255 motions, given the totality of these circumstances, Phelps' plea was voluntary. *See Polak*, 573 F.3d at 432. For this reason, Phelps' waiver of his right to bring a section 2255 action is effective.

One other argument must be addressed. Phelps contends that counsel rendered ineffective assistance when he allowed Phelps to plead guilty even though the government's stipulation of facts could not be supported by the evidence. He asserts that a portion of the change of plea hearing shows that he had "reservations about the quantity of drugs that he was pleading to." He also contends that if counsel had clearly explained the differences between a "conspiracy" and "a simple buyer-seller relationship," he would not have pled guilty.

The portion of the change of plea transcript referenced by Phelps, pages 32-36, does not support Phelps' claim that his plea was not knowing and voluntary. The transcript shows that Phelps did question the amount of methamphetamine that he purchased from Vicki Shaw as shown in the *Stipulated Factual Basis of the Parties.* Phelps, Phelps' counsel, counsel for the government, and the court all discussed the differences in the evidence as to the amounts of meth that Phelps had personally purchased and distributed. The amounts of meth that were reflected in the *Stipulation* and that were stated by Phelps at the hearing differed. Nonetheless, counsel clarified that Phelps was not disputing the fact that he received meth from the other individuals and that on November 20, 2008, he possessed 2 ounces that he had received from Vicki Shaw.

Phelps acknowledged agreed with that clarification. In addition, the discussion led to the conclusion that Phelps did admit that a conspiracy to distribute over 500 grams of meth existed and that he joined the conspiracy. Phelps testified under oath that this recitation of the circumstances was truthful. Counsel for the United States explained that the evidence would show that Vicki Shaw brought to Terre Haute 3 to 5 pounds of meth a week and distributed it to her customers, including Phelps and two others from whom he purchased meth. Phelps= counsel discussed the word Aaccountable@ and how that term did not relate to how much Phelps personally distributed, but that instead it related to how much meth was involved in the entire conspiracy.

Phelps= declared Areservations@ about the quantity of drugs to which he was pleading do not amount to an involuntary or unknowing plea. To the contrary, counsel and the court responded to Phelps= question about the amounts of meth at issue. In doing so, the differences between what was attributable to Phelps in the way of possession and what was involved in the entire conspiracy which he had admittedly joined were explained. Moreover, Phelps has failed to satisfy his burden of showing a reasonable probability that, but for his alleged error, he would not have pled guilty.

As a further indication that his plea was voluntary, Phelps also stated that he decided to plead guilty because he faced a possible sentence of life in prison. Pleading guilty to the mandatory minimum sentence avoided the possibility of life in prison. Phelps has not alleged any error that would have changed the maximum sentence he faced. Phelps did, in fact, face a maximum sentence of life in prison. Phelps= self-professed motivation all but compels a finding that he would not have changed his mind under all of the circumstances presented.

The waiver provision of the plea agreement is effective. Even if the court concluded otherwise, Phelps= claims of ineffective assistance of counsel are meritless.

The foregoing circumstances show that Phelps is not entitled to relief pursuant to 28 U.S.C. ' 2255. The motion for relief pursuant to ' 2255 is therefore denied. Judgment consistent with this Entry shall now issue.

## II. Certificate of Appealability

Pursuant to Federal Rule of Appellate Procedure 22(b), Rule 11(a) of the *Rules Governing ' 2255 Proceedings*, and 28 U.S.C. ' 2253(c), the court finds that Phelps has failed to show that reasonable jurists would find Ait debatable whether the petition states a valid claim of the denial of a constitutional right@ and Adebatable whether [this court] was correct in its procedural ruling.@ *Slack v. McDaniel,* 529 U.S. 473, 484 (2000). The court therefore **denies** a certificate of appealability.

**IT IS SO ORDERED.**

_William T. Lawrence_

Date: 10/03/2011

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana